| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address: Denver City & County Building<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: May 11, 2018 3:59 PM<br>FILING ID: A9CD07988045C<br>CASE NUMBER: 2018CV31762 |
| Plaintiff:     Aimee Swan<br><br>Defendant:   State Farm Mutual Automobile Insurance<br>                     Company | ▲COURT USE ONLY▲ |
| Megan Matthews, Atty. Reg. #43998<br>Natalie Brown, Atty. Reg. #15923<br>Franklin D. Azar & Associates, P.C.<br>14426 East Evans Avenue<br>Aurora, CO 80014<br>Phone Number: (303) 757-3300<br>Fax Number:    (303) 757-3206<br>E-Mail: matthewsm@fdazar.com<br>E-Mail: brownn@fdazar.com | Case No.:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT** | |

COMES NOW Plaintiff, Aimee Swan, by and through her attorneys, Franklin D. Azar and Associates, P.C. for her Complaint against the Defendant, states and alleges as follows:

## I.     PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Aimee Swan ("Ms. Swan") is an individual and resident of the State of Colorado.

2. Defendant State Farm Mutual Automobile Insurance Company ("Defendant State Farm Insurance") is a company with a registered agent in and regularly conducts business activities in the State of Colorado.

3. Jurisdiction is proper in this action pursuant to C.R.S. § 13-1-124, as the incident underlying this cause of action occurred within Denver County, State of Colorado.

4. Venue is proper in this action pursuant to C.R.C.P. § 98(c)(5), as the incident underlying this cause of action occurred within Denver County, State of Colorado.

## II.     GENERAL ALLEGATIONS

5. The collision occurred on June 20, 2017, at approximately 5:57 PM.

6. June 20, 2017 was a Tuesday.

7. The collision occurred during rush hour traffic.

8. Mr. Benjamin Arthur Barone ("Mr. Barone") was driving a 2011 Volkswagen Jetta at the time

of the collision.

9.  Ms. Swan was driving a 2016 Jeep Cherokee at the time of the collision.

10. Ms. Swan was traveling southbound on Colorado Boulevard immediately prior to the collision.

11. Southbound Colorado just north of Colfax has three thru lanes.

12. Southbound Colorado just north of Colfax has two left turn lanes.

13. Ms. Swan was in the left turn lane just before the collision waiting to turn left from southbound Colorado Boulevard onto East Colfax Avenue.

14. Mr. Barone was traveling northbound on Colorado Boulevard at the time of the collision.

15. Northbound Colorado just south of Colfax has three thru lanes.

16. Northbound Colorado just south of Colfax has one left turn lane.

17. Eastbound Colfax at Colorado has two thru lanes.

18. Eastbound Colfax at Colorado has two turn lanes.

19. Westbound Colfax at Colorado has two thru lanes.

20. Westbound Colfax at Colorado has two turn lanes.

21. The intersection of Colfax and Colorado is large.

22. Mr. Barone was traveling in lane #2 at the time of the collision.

23. Immediately prior to the collision, the traffic light for traffic traveling northbound on Colorado Boulevard turned red.

24. Immediately prior to the collision, the traffic light for traffic waiting to turn left from southbound Colorado Boulevard onto East Colfax Avenue turned green.

25. Immediately prior to the collision, Ms. Swan began to turn left from Colorado Boulevard onto East Colfax Avenue.

26. As Ms. Swan began to make her left turn, a green turn arrow was illuminated for traffic turning left from southbound Colorado Boulevard onto East Colfax Avenue

27. Ms. Swan was traveling approximately 10 miles per hour immediately prior to the collision.

28. Mr. Barone was traveling approximately 30 miles per hour immediately prior to the collision.

29. Mr. Barone did not stop at the red light for traffic traveling northbound on Colorado Boulevard.

30. Mr. Barone ran the red light.

31. Mr. Barone and Ms. Swan's vehicles collided after Mr. Barone ran the red light at the

intersection of Colorado Boulevard and East Colfax Avenue.

32. The points of collision were the side of Mr. Barone's vehicle and the front of Ms. Swan's vehicle.

33. After the collision, Mr. Barone pounded on Ms. Swan driver's side window with his fists.

34. After the collision, Mr. Barone verbally assaulted Ms. Swan while standing outside her car window.

35. No third person caused the collision.

36. Denver Police investigated the collision.

37. Ms. Swan had evident injuries at the scene of the collision.

38. Ms. Swan incurred injuries, losses, and damages as a result of the collision

39. Ms. Swan's injuries, losses, and damages were caused by Mr. Barone's negligence.

40. Denver Police cited Mr. Barone with Careless Driving, pursuant to C.R.S. § 42-4-1402**.**

41. Mr. Barone was driving carelessly at the time of the collision.

42. Mr. Barone's careless driving was the cause of the collision.

43. Mr. Barone possessed liability insurance through Mendota Insurance Company.

44. Mr. Barone's liability insurance with Mendota Insurance Company policy limits were $25,000 per person.

45. Mendota Insurance Company tendered the policy limits of $25,000 to Ms. Swan in the form of a check dated August 3, 2017.

46. Ms. Swan's medical bills for treatment related to the collision at the time she settled the claim with Mendota Insurance Company were $43,699.62.

47. Mr. Barone was underinsured for purposes of covering Plaintiff's injuries, damages, and losses.

48. Ms. Swan's medical bills for treatment related to the collision currently total $69,489.63.

49. Ms. Swan's current medical bills for treatment related to the collision exceed the amount of the policy limits of Mr. Barone's liability coverage.

50. Ms. Swan possesses underinsured motorist insurance coverage which was purchased from Defendant State Farm Insurance prior to the subject motor vehicle collision.

51. Ms. Swan's underinsured motorist insurance policy coverage limits are $250,000 per person.

52. On or about August 1, 2017, Ms. Swan submitted documentation to Defendant State Farm Insurance to support her claim.

53. On or about August 1, 2017, Ms. Swan requested that the claim be evaluated for benefits

with medical bills for treatment related to the collision totaling $43,699.62.

54. All bills submitted on or about August 1, 2017 were for treatment related to the collision.

55. On or about August 11, 2017, Defendant State Farm Insurance stated in a phone conversation that no benefits were owed at that time to Ms. Swan.

56. On or about August 23, 2017, Defendant State Farm Insurance issued an advance payment check to Ms. Swan for $19,764.62.

57. On or about September 10, 2017, a supplemental request to evaluate Ms. Swan's claim was sent to Defendant State Farm Insurance.

58.  On or about September 10, 2017 State Farm was provided medical records for treatment related to the collision.

59. On or about September 10, 2017 State Farm was provided medical bills for treatment related to the collision totaling $45,294.62.

60. All bills submitted on or about September 10, 2017 were for treatment related to the collision.

61. On or about September 27, 2017, Defendant State Farm Insurance issued an advance payment check to Ms. Swan for $550.00.

62. On or about October 19, 2017, Defendant State Farm Insurance extended an offer for non-economic damages in the amount of $6,250.

63. The offer Defendant State Farm Insurance extended on or about October 19, 2017, possessed a mathematical error.

64. The mathematical error resulted in a total offer for non-economic damages of $6,270.

65. On or about November 13, 2017, in a letter, Plaintiff, through her attorney, requested more detailed information about Defendant State Farm Insurance's offer of $6,270 in non-economic damages and $45,294.62 in economic damages.

66. On or about November 13, 2017, Ms. Swan, through her attorney, provided detailed information about vertebral artery dissections.

67.  On or about November 13, 2017, Ms. Swan, through her attorney, provided medical literature about vertebral artery dissections.

68. On or about November 13, 2017, Ms. Swan, through her attorney, asked whether the offer of $6,270 included damages for future medical bills.

69. On or about November 13, 2017, Ms. Swan, through her attorney, asked whether the offer of $6,270 included damages for future pain and suffering.

70. On or about November 13, 2017, Ms. Swan, through her attorney, asked whether the offer of $6,270 included damages for interest.

71. On or about November 13, 2017, Ms. Swan, through her attorney, asked what resources were relied upon by Defendant State Farm Insurance in evaluating the value of Ms. Swan's claim.

72. On or about November 13, 2017, Ms. Swan, through her attorney, asked whether Defendant would consider the medical literature and medical information about vertebral artery dissections provided in Ms. Swan's November 13, 2017 letter.

73. In its letter dated November 27, 2017, Defendant State Farm Insurance confirmed in a letter its offer for non-economic damages in the amount of $6,250.

74. In its letter dated November 27, 2017, Defendant State Farm Insurance did not respond as to whether the offer of $6,250 included future medical bills.

75. In its letter dated November 27, 2017, Defendant State Farm Insurance did not respond as to whether the offer of $6,250 included future pain and suffering.

76. In its letter dated November 27, 2017, Defendant State Farm Insurance did not respond as to whether the offer of $6,250 included interest.

77. In its letter dated November 27, 2017, Defendant State Farm Insurance did not respond as to what resources were relied upon by Defendant State Farm Insurance in evaluating the value of Ms. Swan's claim.

78. In its November 27, 2017 letter, Defendant State Farm Insurance did not respond as to whether it would consider the medical literature and medical information about vertebral artery dissections provided Ms. Swan, through her attorney, on or about November 13, 2017.

79. On or about November 28, 2017, Ms. Swan, through her attorney, sent Defendant State Farm Insurance additional medical bills and records for evaluation with medical bills totaling $53,313.05.

80. All bills submitted on or about November 28, 2017 were for treatment related to the collision.

81. On or about December 21, 2017, Defendant State Farm Insurance issued an advance payment check to Ms. Swan for $6,459.82.

82. In its December 21, 2017 advance payment, Defendant State Farm Insurance did not provide for full compensation for the Radiology Imaging Associates bill.

83. In its December 21, 2017 advance payment, Defendant State Farm Insurance did not include compensation for the Front Range Spine and Neurosurgery bill.

84. On or about December 21, 2017, Defendant State Farm Insurance did not increase its offer of non-economic damages from $6,250.

85. On or about December 4, 2017, Ms. Swan, through her attorney, resubmitted the questions

from her November 13, 2017 letter.

86. On or about December 4, 2017, Defendant State Farm Insurance confirmed that its offer for non-economic damages remained at $6,250.

87. In its December 4, 2017 letter, Defendant State Farm Insurance did not respond to Ms. Swan's questions in her November 13, 2017 or December 4, 2017 letters about whether the offer of $6,250 included future medical bills.

88. In its December 4, 2017 letter, Defendant State Farm Insurance did not respond to Ms. Swan's questions in her November 13, 2017 or December 4, 2017 letters about whether the offer of $6,250 included future pain and suffering.

89. In its December 4, 2017 letter, Defendant State Farm Insurance did not respond to Ms. Swan's questions in her November 13, 2017 or December 4, 2017 letters about whether the offer of $6,250 included any interest.

90. In its December 4, 2017 letter, Defendant State Farm Insurance did not respond to Ms. Swan's questions in her November 13, 2017 or December 4, 2017 letters about what resources were relied upon by Defendant State Farm Insurance in evaluating the value of Ms. Swan's claim.

91. In its December 4, 2017 letter, Defendant State Farm Insurance did not respond to Ms. Swan's questions in her November 13, 2017 or December 4, 2017 letters about whether it would consider the medical literature and medical information about vertebral artery dissections provided with her November 13, 2017 letter.

92. On or about March 6, 2018, Ms. Swan, through her attorney, wrote a letter noting that Defendant State Farm Insurance had not yet responded to any of Ms. Swan's questions to date regarding the basis of the $6,250 offer.

93. In a letter dated March 8, 2018, Defendant State Farm Insurance did not respond to any of Ms. Swan's unanswered questions regarding the basis of the $6,250 offer.

94. Defendant State Farm Insurance's offer as of the date of filing this Complaint for non-economic damages is $6,250.00.

95. Defendant State Farm Insurance, as of the date of filing this Complaint, has sent Ms. Swan advance payments for medical bills totaling $26,774.44.

96. Defendant State Farm Insurance's total offer for underinsured motorist benefits for both economic and non-economic damages, as of the date of the filing of this Complaint, is $33,024.44.

### III.     FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

97. Plaintiff incorporates all prior allegations as though fully set forth herein.

98. Sometime prior to the collision, Ms. Swan entered into a contract with Defendant State Farm Insurance for the purpose of obtaining automobile insurance, which policy includes coverage for claims involving underinsured motorists.

99. State Farm had a duty to perform in a manner set forth in the policy.

100.     State Farm breached its duty to perform under the policy as more fully described above.

101.     At all times pertinent to the within action, all the premiums as required under the contract for insurance were timely paid to Defendant State Farm Insurance.

102.     Ms. Swan has fulfilled all of her obligations under the policy issued by State Farm.

103.     Ms. Swan has fully cooperated with State Farm with regard to her claim for benefits.

104.     Ms. Swan advised Defendant State Farm Insurance of a claim for underinsured motorist benefits for this incident under its policy of insurance, and otherwise fully cooperated with Defendant State Farm Insurance in connection with the claim.

105.     Ms. Swan is an intended beneficiary of Defendant State Farm Insurance's insurance policy/contract and is therefore entitled to enforce its terms.

106.     As the holder of an under-insured motorist insurance policy, Ms. Swan is entitled to be compensated by Defendant State Farm Insurance for all damages she has incurred in excess of the underlying limits as a result of the collision, including past and present medical expenses, pain, suffering, loss of enjoyment of life, loss of earnings and earning capacity, permanency and/or impairment, and disability, under the under-insured motorist coverage of the policy.

107.     As a direct result of Defendant State Farm Insurance's breaches of its duties to its insured, Ms. Swan has been damaged including, but not necessarily limited to:

a.  Being forced to incur additional costs in litigation; and,

b.  Enduring the emotional trauma of being unnecessarily involved in a lawsuit with defendant.

## IV.     SECOND CLAIM FOR RELIEF
### (FIRST PARTY STATUTORY CLAIM
### UNDER C.R.S. § 10-3-1116)

108.     Plaintiff incorporates all prior allegations as though fully set forth herein.

109.     Defendant State Farm Insurance has denied and delayed payment of underinsured motorist benefits to Ms. Swan without a reasonable basis for its action.

110.     Defendant State Farm Insurance's unreasonable position and conduct has caused Ms. Swan damage by the loss of the compensation that is due to her and which Defendant should have previously paid to her.

111.     In accordance with C.R.S. § 10-3-1116, Ms. Swan is entitled to recover from Defendant State Farm Insurance two times the covered under-insured motorist benefits, plus reasonable attorney's fees and court costs.

112.     As a direct and proximate result of the conduct of Defendant, Ms. Swan has suffered injuries and damages more fully described above.

## V.     THIRD CLAIM FOR RELIEF
### (BAD FAITH)

113.     Plaintiff incorporates all prior allegations as though fully set forth herein.

114.     Defendant State Farm Insurance owed Ms. Swan a duty to act in good faith in investigating, reviewing, adjusting, and settling her claims.

115.     Defendant State Farm Insurance breached its duties to its insured, and acted in bad faith, through its conduct as described above and by engaging in the following, among other acts:

a. Compelling Ms. Swan to institute litigation to recover amounts due to her under the underinsured motorist bodily injury liability benefits afforded Ms. Swan under the insurance policy including, but not limited to, amounts recoverable for future treatment Ms. Swan needs;

b. Favoring the interests of Defendant State Farm Insurance, an insurer, over those of Ms. Swan, an insured, to whom Defendant State Farm Insurance owes fiduciary and statutory duties;

c. Failing or delaying payment of reasonable compensation for the injuries, damages, and losses Ms. Swan suffered at the hands of an underinsured motorist including, but not limited to losses related to Ms. Swan's need for additional care; and,

      d.   Incompetently evaluating Ms. Swan's claim.

      e.   Failing to respond to Ms. Swan's reasonable questions about the basis of State Farm's offer.

116.     Defendant State Farm Insurance's actions are unreasonable.

117.     Defendant State Farm Insurance knew its conduct was unreasonable or disregarded the fact that its conduct was unreasonable.

118.     As a direct result of Defendant's breaches of its duties to its insured, Ms. Swan has been damaged including, but not necessarily limited to:

      a.   Being forced to incur additional costs in litigation;

      b.   Enduring the emotional trauma of being unnecessarily involved in a lawsuit with Defendant; and,

WHEREFORE, Plaintiff Ms. Swan prays for judgment against Defendant State Farm Insurance for all general damages, economic damages, all statutory and necessary costs including, but not limited to, expert witness fees and the expenses incurred in investigation and discovery required to present Plaintiff's claims, attorney fees and interest from the time of the occurrence, post-judgment interest at the requisite rate, and for such other and further relief as this Court shall deem proper, just, and appropriate under the circumstances.

**THE PLAINTIFF RESPECFULLY REQUESTS TRIAL BY JURY, ON ALL ISSUES SO TRIABLE.**

Respectfully submitted May 11, 2018.

FRANKLIN D. AZAR & ASSOCIATES, P.C.

By: /s/ Megan Matthews_____
Megan Matthews, #43998
Natalie Brown, #15923
ATTORNEYS FOR PLAINTIFF

**Plaintiff's Address:**
**Aimee Swan**
**8500 East Mississippi Avenue #64**
**Denver, Colorado 80247**

*In accordance with C.R.C.P. 121, §1-26(9), a printed copy of the document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*